## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **ANTWAN GLOVER** | ) | CASE NO.: 8:24-cv-2913 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE: |
| | ) | |
| **CITY OF LAKELAND, CHIEF** | ) | **COMPLAINT** |
| **SAM L. TAYLOR, DETECTIVE** | ) | |
| **DILLON J. CORNN,** | ) | **(Jury Demand Endorsed Hereon)** |
| **SERGEANT MARK EBY,** | ) | |
| **OFFICER ANTON E.** | ) | |
| **JEFFERSON, OFFICER JASON** | ) | |
| **N. MCCAIN** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Antwan Glover ("Plaintiff"), by and through undersigned counsel, submits this Complaint against Defendants City of Lakeland, a public subdivision of the State of Florida, Chief Sam Taylor, Sergeant Dillon Eby, Detective Dillon Cornn, Officer Anton Jefferson, and Officer Jason McCain (collectively, "Defendants"), and alleges as follows:

## I.    INTRODUCTION

1.    This action arises out of Defendants' cruel, senseless, and terrorizing arrest and attack of Plaintiff Antwan Glover.

2.    Plaintiff alleges, without limitation, that Defendants, Anton E. Jefferson, Jason N. McCain, Dillon J. Cornn, and Mark Eby (collectively, the "Arresting

Officers") used excessive force when they assaulted and arrested Plaintiff in Lakeland, Florida on December 18, 2022.

3.      The Arresting Officers used excessive force when they punched and tazed Plaintiff in Lakeland, Florida on December 18, 2022.

4.      Plaintiff further alleges, without limitation, that Defendants Sergeant Mark Eby ("Defendant Eby") and Police Chief Sam Taylor ("Defendant Chief Taylor") (collectively, "Supervisory Defendants") were direct supervisors of the Arresting Officers.

5.      Plaintiff further alleges, without limitation, that Defendants Sergeant Eby, and Chief Taylor knew or reasonably should have known of, participated in, endorsed, condoned, and/or ratified the unconstitutional conduct of their subordinates, Arresting Officers.

6.      Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983 for the deprivation of his clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

7.      Plaintiff also brings this action pursuant to *Monell v. Dep't of Soc. Svcs. of City of New York,* 436 U.S. 658 (1978).

## II.    <u>JURISDICTION AND VENUE</u>

8.      All prior paragraphs are restated herein by this reference.

9.      This Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, as this action is brought, pursuant to 42 U.S.C. § 1983, to redress a deprivation of constitutional rights as set forth herein.

10.     This Court has personal jurisdiction over Defendants and venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because, upon information and belief, Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

11.     Plaintiff seeks redress from all police officers named herein in both their official and individual capacities.

12.     Plaintiff alleges all police officers named herein were acting under and/or outside color of law and/or pursuant to the policies, customs, and/or usages of the City of Lakeland.

### III.    PARTIES

### A.    Plaintiff

13.     All prior paragraphs are restated herein by this reference.

14.     At all times relevant herein, Plaintiff Antwan Glover is an adult person and resident of the City of Lakeland, County of Polk, and State of Florida.

### B.    Defendants

#### *Defendant Police Officers*

15.     All preceding paragraphs are incorporated as if fully rewritten herein.

16.     At the time of Plaintiff's unlawful arrest, the Arresting Officers were/are police officers employed by Defendant City of Lakeland.

17.     Defendant Dillon Cornn resides in Polk County, Florida.

18.     Defendant Jason McCain resides in Polk County, Florida.

19.     Defendant Anton Jefferson resides in Polk County, Florida

20. At the time of Plaintiff's unlawful arrest, Defendant Chief Taylor was employed as the Lakeland Police Chief by Defendant City of Lakeland and was a direct supervisor of Defendant Eby and the Arresting Officers.

21. Defendant Chief Taylor resides in Polk County, Florida.

22. At the time of Plaintiff's unlawful arrest, Defendant Eby was employed as a Sergeant by Defendant City of Lakeland and was a direct supervisor of the Arresting Officers.

23. Defendant Eby resides in Polk County, Florida.

### *Defendant City*

24. Defendant City of Lakeland ("Defendant City") is a municipal corporation located at City Hall, 228 S Massachusetts Avenue, Lakeland, Florida, 33801, in Polk County.

25. Defendant City maintains a division of police at the Lakeland Police Department.

26. Defendant City employs/employed all police officers identified herein.

27. The mission statement for the City's police department is: "In partnership with the community, while affording dignity and respect to all persons, our mission is to maintain order and improve the quality of life of the citizens we serve."

28. The vision for the City's police department is: "dedicated professionals working together to provide excellent service which enhances the quality of like in Lakeland."

29.     The values of the City's police department are: "We are committed to doing things RITE: with **R**espect, **I**ntegrity, **T**eamwork, and **E**xcellence."

30.     As will be shown below, Defendants violated the department's vision, mission statement and values by participating in the unreasonably violent arrest and senseless prosecution of Plaintiff.

## IV.    STATEMENT OF FACTS

### Defendants Use Excessive Force and Issue a Baseless Charge

31.     All preceding paragraphs are incorporated as if fully rewritten herein.

32.     The misconduct of the Arresting Officers and the Supervisory Defendants occurred on or about Sunday December 18, 2022, at approximately 6:00pm.

33.     The misconduct of Defendant City of Lakeland has been systemic and on-going for many years prior to and through December 18, 2022.

34.     On December 18, 2022, the Arresting Officers are assigned to the City of Lakeland Police Department's Street Crimes Unit ("SCU").

35.     On December 18, 2022, the Arresting Officers are dressed in black SCU shirts with department patches on both sleeves, a department badge sewn on to the left chest area and "Special Weapons and Tactics" sewn on to the right chest area.

36.     On December 18, 2022, the Arresting Officers also wear tactical vests that identify them as police in bold white letters on the front and back.

37.     On December 18, 2022, the Arresting Officers are partnered together and patrolling the 400 Block of West 9th Street in Lakeland, Florida.

38.    The Arresting Officers patrol the 400 Block of West 9th Street in Lakeland, Florida in an unmarked black Ford Explorer.

39.    The Arresting Officers travel eastbound on West 9th Street and see Plaintiff driving a black four-door BMW.

40.    Defendant Jefferson and/or Defendant McCain see that Plaintiff is not wearing his seat belt and driving approximately 3 to 5 miles per hour on West 9th Street in Lakeland, Florida.

41.    Plaintiff arrives at his destination and puts his car in park.

42.    Defendant Jefferson or Defendant McCain drive the unmarked black Ford Explorer and pull their car in line with Plaintiff's driver's side door.

43.    The Arresting Officers get out of the unmarked black Ford Explorer and walk towards Plaintiff's car.

44.    Defendant McCain stands by Plaintiff's driver's side window and states that he is executing a traffic stop.

45.    Defendant Cornn sees two passengers in Plaintiff's car.

46.    Defendant Jefferson reports that he sees a "cannabis cigar" near Plaintiff's cup holder.

47.    Defendant McCain tells Plaintiff that he is a Lakeland Police Officer.

48.    Plaintiff then opens his driver's side car door to speak with the Arresting Officers.

49.    Once Plaintiff opens the door, the Arresting Officers smell burning cannabis and Defendant McCain reports that he sees cigarettes with cannabis sitting in the center console ashtray.

50.    Plaintiff tells the Arresting Officers that he has a medical marijuana card.

51.    Plaintiff was diagnosed with post-traumatic stress disorder and was approved for a medical marijuana card on July 22, 2022, by Dr. Edward Jacobson.

52.    The Arresting Officers do not ask Plaintiff for his medical marijuana card.

53.    Defendant McCain sees a brown satchel around Plaintiff's chest and asks Plaintiff if he has a firearm in the satchel.

54.    Plaintiff responds that he does not have a firearm.

55.    Defendant McCain orders Plaintiff out of the car.

56.    Plaintiff asks Defendant McCain why he needs to get out of the car to which Defendant McCain responds, "get out of the fucking car."

57.    Plaintiff attempts to get out of his car and Defendant McCain pushes the car door against Plaintiff.

58.    Plaintiff's window is rolled halfway down.

59.    Defendant McCain reaches through the window grabbing at Plaintiff's satchel.

60.    Defendants Cornn and McCain grab Plaintiff's arms and continue to attempt to remove the brown satchel from Plaintiff's body.

61.    Plaintiff's satchel remains around his torso and Defendant McCain continues holding onto Plaintiff's right arm and hand.

62.    Defendant McCain grabs Plaintiff around his head and upper torso and pulls Plaintiff in front of him.

63.    Defendant Cornn, Defendant McCain, and Defendant Jefferson struggle with Plaintiff, bringing him to the ground.

64.    Defendant Sergeant Eby stands by with a flashlight and yells at Plaintiff's family members and other bystanders to step away from the scene.

65.    Defendant Cornn, and/or Defendant McCain, and/or Defendant Jefferson place their knees onto Plaintiff's back.

66.    Plaintiff's family members yell at the Arresting Officers, "Don't hit him. Do not hit him."

67.    As Defendants Cornn, McCain, and/or Jefferson punch Plaintiff in his face at least three times, Defendant Sergeant Eby responds, "Well then, he needs to quit fighting."

68.    Another bystander repeatedly screams, "stop punching my dad."

69.    The Arresting Officers eventually roll Plaintiff onto his back.

70.    Plaintiff holds his hands with open palms near his head:



71.    Defendant Cornn stands over Plaintiff with one leg on either side of him, bends down, and punches Plaintiff twice in his face while Defendant Jefferson stands over Plaintiff and aims his Conducted Energy Weapon ("CEW") at Plaintiff's chest.

72.    Defendant Jefferson deploys his CEW causing Plaintiff to flail his arms and legs.

73.    The Arresting Officers pile on top of Plaintiff and, using their body weight, continuously shove him into the ground.

74.    Defendant Jefferson also deploys his CEW into Plaintiff's upper back.

75.    The Arresting Officers collectively deploy their CEW at least three times.

76.    The Arresting Officers secure Plaintiff's arms behind his back and arrest him.

77.    Later, the Arresting Defendants use the Driver and Vehicle Information Database to identify the driver as Plaintiff Antwan Denard Glover.

78.    The Arresting Officers transport Plaintiff to the Lakeland Police Department.

79.    Once the Arresting Officers and Plaintiff arrive at Lakeland Police Department Defendant Cornn exits the unmarked black Ford Explorer.

80.    Defendant Cornn walks up to the rear door on the driver's side of the unmarked black Ford Explorer and opens the door.

81.    Plaintiff tells Defendant Cornn that he does not want to speak with him.

82.    Defendant Cornn responds, "shut the fuck up before we beat your ass again."

83.    Defendant McCain exits the unmarked black Ford Explorer, walks up to Plaintiff, and removes him from the vehicle.

84.    Plaintiff remains handcuffed.

85.    Defendant McCain turns Plaintiff around and slams him on the hood of the vehicle face down and pulls his arms up towards his head.

86.    The Arresting Officers do not find:

      a.  Any weapons on Plaintiff's person;

      b.  Any weapons in Plaintiff's car; or

      c.  Any weapons inside of Plaintiff's brown satchel.

10

87.     The Arresting Officers charge Plaintiff with:

      a.  Three counts of battery on a law enforcement officer; and

      b.  One count of resisting officers with violence.

88.     The Arresting Officers do ***not*** charge Plaintiff with a seatbelt violation or with possession of marijuana.

89.     Defendant Chief Taylor places the Arresting Officers on paid administrative leave in January 2023 pending investigation.

90.     Defendant Chief Taylor finds the Arresting Officers' use of force reasonable.

91.     Defendant City does not bring criminal charges against the Arresting Officers.

92.     On May 14, 2024, Katherine S. Artman, Assistant State Attorney, filed a Notice of Nolle Prosequi to terminate and dismiss all of Plaintiff's charges based on facts and circumstances that the charges could not be proven beyond a reasonable doubt.

93.     The Defendants caused Plaintiff to experience severe emotional stress, physical pain, and other damage and harm as detailed in this Complaint.

94.     Following the aforementioned events, and as a direct and proximate cause of same, Plaintiff's medical providers performed surgery on his shoulder and repaired his tooth.

95.    Following the aforementioned events, and as a direct and proximate cause of same, Plaintiff experiences exacerbated symptoms of post-traumatic stress disorder, anxiety, and depression.

96.    Following the aforementioned events, and as a direct and proximate cause of same, Plaintiff's medical providers referred Plaintiff to physical and mental health therapy.

97.    Following the aforementioned events, and as a direct and proximate cause of same, Plaintiff's medical providers prescribed him anti-anxiety and anti-depression medications.

## V.    CLAIMS ALLEGED
### COUNT I
**(Excessive Force)**

98.    All preceding paragraphs are incorporated as if fully rewritten herein.

99.    This claim is brought pursuant to Title 42 U.S.C. § 1983.

100.   Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

101.   The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…."

102.    The United States Supreme Court has long held that where officers use force in the arrest or detention of a citizen that is excessive, it violates the Fourth Amendment to the United States Constitution. *See generally*, draft *Graham v. Connor*, 490 U.S. 386 (1989) (determining that a use of force analysis requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake).

103.    While acting under color of law, the Arresting Officers deprived Plaintiff of his well-established right to be free from excessive force.

104.    In other words, Plaintiff asserts that he had the well-established constitutional right not to be subjected to excessive force while being arrested, even if his arrest could have been otherwise proper.

105.    On December 18, 2022, the Arresting Officers were only permitted to use the amount of force necessary under the circumstances to arrest Plaintiff.

106.    At all times relevant to this matter, the Defendants were clothed with the authority of the state and misused that authority.

107.    In this case, Plaintiff claims that the Arresting Officers used excessive force when they arrested and/or seized Plaintiff, to wit:

    a. The Arresting Officers forcibly wrestled Plaintiff to the ground;

    b. The Arresting Officers repeatedly punched Plaintiff in his face and torso;

    c. The Arresting Officers repeatedly forced Plaintiff's body into the ground using their body weight;

d.  The Arresting Officers deployed their CEWs into Plaintiff's body;

e.  The Arresting Officers took Plaintiff into custody;

f.  The Arresting Officers transported Plaintiff to Polk County Jail; and

g.  The Arresting Officers effectuated his processing and booking at Polk County Jail in violation of state law.

108.  As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff has been damaged, including but not limited to physical pain, mental anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, and loss of sense of personal safety, dignity, and legal fees and costs.

## COUNT II
### (False Arrest)

109.  All preceding paragraphs are incorporated as if fully rewritten herein.

110.  This claim is brought pursuant to Title 42 U.S.C. § 1983.

111.  The United States Supreme Court has also long held: Because arrests are seizures of persons, they must be based upon probable cause in order to be constitutional. *See Payton v. New York*, 445 U.S. 573, 585, (1980).

112.  While acting under color of law, the Arresting Officers deprived Plaintiff of his well-established right to be free from seizure without probable cause.

113.  At all times relevant to this action, Plaintiff asserts that he had the well-established constitutional right to be free from an arrest or seizure not based on probable cause or other legal justification.

114.    At all times relevant to this matter, the Arresting Officers were clothed with the authority of the state and misused that authority.

115.    The Arresting Officers arrested Plaintiff without a warrant.

116.    Prior to their warrantless arrest of Plaintiff, the Arresting Officers failed to investigate Plaintiff's use and possession of marijuana.

117.    Plaintiff has a medical marijuana card that permits his use and possession of marijuana.

118.    The Defendants never charged Plaintiff with any crime related to the use or possession of marijuana.

119.    The Defendants never charged Plaintiff with any crime related to a seatbelt violation.

120.    The Arresting Officers physically restrained/arrested Plaintiff without permission or consent to do so, to wit:

        a.    They bound his hands with handcuffs, locked him in a patrol car, and drove him to and held him at Polk County Jail for several days.

121.    The Arresting Officers observed conduct that could have established probable cause to justify pre-trial restraint, detention, or arrest, however they failed to properly investigate when Plaintiff advised them that he maintained a medical marijuana card.

122.    Accordingly, the Arresting Officers had no evidence to prove that Plaintiff had committed or was in the act of committing any arrestable offense when they arrested him.

123.    The Arresting Officers did not arrest Plaintiff for their own protection nor for the protection of any other person, to wit:

      a.    Plaintiff posed no threat to himself, the Arresting Officers, or the community; and

      b.    Plaintiff was unarmed and made no verbal or physical threats towards the Arresting Officers or the community.

124.    As a direct and proximate cause of the aforesaid arrest without probable cause or other legal justification, Plaintiff was damaged, including but not limited to: anguish, terror, physical pain, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, and loss of sense of personal safety and dignity.

## COUNT III
### (Supervisory Liability)

125.    All preceding paragraphs are incorporated as if fully rewritten herein.

126.    At all times relevant to this matter, Defendant Mutz and Defendant Chief Taylor (collectively, the "Supervisory Defendants") was/were the direct supervisor(s) of the Arresting Officers.

127.    At all times relevant to this matter, the Supervisory Defendants had supervisory authority over the Arresting Officers.

128.    At all times relevant to this matter, the Supervisory Defendants knew or reasonably should have known of, and/or participated in, and/or condoned, and/or ratified:

a.  The arrest and/or seizure of Plaintiff without probable cause, as aforesaid;

b.  The use of handcuffs to unreasonably and painfully restrain Plaintiff, as aforesaid;

c.  The use of strikes to Plaintiff's body to unreasonably and painfully restrain Plaintiff;

d.  The use of their CEWs to unreasonably and painfully torcher Plaintiff; and

e.  The placing of Plaintiff in a police car and transporting him to the Polk County Jail; and

f.  The charging of Plaintiff without probable cause, as aforesaid.

129.  Accordingly, the Supervisory Defendants knew or reasonably should have known that their acts and/or failures to act would likely cause the constitutional injury that befell Plaintiff, to wit: by endorsing, promoting, encouraging, and/or not intervening to stop the arrest of Plaintiff.

130.  The Supervisory Defendants violated Plaintiff's Fourth Amendment Rights to be free from unreasonable search and seizure and to be free from prosecution without probable cause.

131.  The Supervisory Defendants had a duty and/or were required by his/their training to take action to prevent Arresting Officers from arresting, seizing, and/or prosecuting Plaintiff as described in this Complaint.

132.    Despite his/their knowledge of the misconduct of the Arresting Officers, as stated in this Complaint, the Supervisory Defendants took no action, failed to prosecute the Arresting Officers for the crime of false imprisonment and/or assault and/or battery, failed to impose reasonable discipline on the Arresting Officers, failed to document the misconduct of the Arresting Officers fully and accurately, and/or otherwise abandoned his/their supervisory duties.

133.    As a result of his/their failures and/or abandonment of his/their supervisory duties, as stated above, the Supervisory Defendants created an environment that condoned the aforementioned misconduct and perpetuated and/or facilitated and/or aided the misconduct of the Arresting Officers against Plaintiff.

134.    The Supervisory Defendants engaged in acts and omissions that were the product of a reckless or callous indifference to Plaintiff's constitutional rights, to wit: the Supervisory Defendants approved, endorsed, and/or condoned the arrest and charging of Plaintiff in the manner detailed above.

135.    By their failure to intervene or their empowerment of the Arresting Officers to effectuate the arrest of Plaintiff, the Supervisory Defendants in fact caused Plaintiff's constitutional deprivation.

136.    As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff has been damaged, including but not limited to: anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, and loss of sense of personal safety and dignity.

## COUNT IV
### (*Monell* Claim – Municipal Liability)

137.    All preceding paragraphs are incorporated as if fully rewritten herein.

138.    This claim is brought pursuant to Title 42 U.S.C. § 1983.

139.    This claim is brought per *Monell v. Dep't of Soc. Svcs. of City of New York,* 436 U.S. 658 (1978).

140.    Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written laws or express policy is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (e) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

141.    A municipality is liable under § 1983 when its agency's policy or custom, as evidence in any of the manners set forth above, is "closely related" to the ultimate constitutional injury suffered by the plaintiff, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

142.    Defendant City maintains an armed police force, the Lakeland Police Department, with the power to arrest citizens.

143.    Defendant City is also ultimately responsible for the assignment of personnel for training and disciplinary purposes.

144.    Defendant City is a person subject to suit under 42 U.S.C. § 1983 for the violation of Plaintiffs' rights under the United States Constitution.

145.    Defendant city is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment, which disproportionately involves African Americans, like Plaintiff.

146.    In fact, on November 14, 2021, Defendant Officer McCain and Defendant Officer Jefferson approached Armani Evans', a black male, car while he was parked in a parking lot outside of Wild Greg's Saloon. Evans told the officers that he was going home when they asked him to exit his car.[1]

147.    Defendant Officer McCain and Defendant Officer Jefferson reported that they smelled cannabis coming from Evans' car. Despite Evans posing no threat to the officers or the public, Defendant Officer McCain and Defendant Officer Jefferson tased Evan and struck him several times with their fists and flashlights.[2]

148.    In January of 2023, Defendant Chief Taylor reassigned the officers to "modified duty status" limiting their contact with the public, as community activists shed light on several excessive force complaints against the Department.[3]

---

[1] BLM alleges 'pattern of violent behavior' by Lakeland Police officers (last accessed Dec. 12, 2024).
[2] *Id.*
[3] Lakeland officers reassigned as more people allege police use of excessive force (last accessed Dec. 12, 2024).

149.    Evans suffered multiple cuts on his face and lost a tooth as a result of his arrest by Defendant Officer McCain and Defendant Officer Jefferson.[4]

150.    On January 5, 2022, Timothy Davis Jr. sat in his parked car waiting for his daughter at her bus stop when Defendant Officer McCain and Defendant Officer Jefferson approached his car. Davis was not wearing his seatbelt and was not actively operating his vehicle, however the officers alleged seat belt violation and pulled Davis out of his car by his hair and struck him multiple times until he lost consciousness. As a result, Davis suffered from a broken jaw, broken right eye socket, and partial vision loss in his right eye. *Timothy Davis Jr. v. City of Lakeland et al*, Complaint, Case No. 8:CV02507. (M.D. Fla filed Nov. 3, 2023).

151.    Among Florida police departments, Lakeland has statistically used more force per arrest than 95% of departments statewide.[5]

152.    Additionally, Lakeland Police Department has a larger racial disparity in its use of deadly force than 80% of departments statewide.[6]

153.    In 2022, even though roughly 19.9% of the City's residents are Black, they made up nearly half of those arrested by the Lakeland Police Department.[7]

154.    Additionally, over 54.5% of all protective action incidents carried out by the Lakeland Police Department were carried out against Black citizens.

---

[4] BLM alleges 'pattern of violent behavior' by Lakeland Police officers (last accessed Dec. 12, 2024).
[5] https://policescorecard.org/fl/police-department/lakeland (last accessed Dec. 12, 2024).
[6] *Id*.
[7] Lakeland Police Department, 2022 OPS Annual-Report (www.lakelandgov.net).

155.    This pattern and practice with respect to the use of excessive force, and its disproportional use against Black citizens, results in an unwritten policy or custom within the Lakeland Police Department of applying disproportionate force in officer interactions with Black citizens.

156.    The aforesaid unwritten policy or custom put Plaintiff at an unreasonable risk of grievous bodily harm, injury, or death.

157.    The Lakeland Police Department has an unwritten policy or custom pertaining to traffic stops that put Plaintiff at a higher risk of unreasonable force following a traffic stop with Defendant McCain and Jefferson.

158.    The aforesaid unwritten policy or custom did in fact cause Plaintiff's injuries.

159.    At all times relevant to this matter, Defendant Chief was the top policymaker for Defendant City's Police Department.

160.    Prior to and on the date of Plaintiff's arrest, Defendant Chief Taylor promulgated, knew of, acquiesced, and/or endorsed an unwritten practice/policy that permitted police officers to initiate traffics stops on Black drivers and then use excessive force to remove drivers from their vehicles.

161.    The City's practice of disproportionately conducting traffic stops on Black citizens in Lakeland violates Plaintiff's well-established Fourth Amendment right to be free of unreasonable search and seizures.

162.   For example, in 2022, "OPS completed a thorough review of all protective action incidents to determine any trends or patterns related to the age, race, and/or gender of subjects related to protective action incidents…".[8]

163.   In 2022, even though roughly 19.9% of the City's residents are Black, they made up *67%* of the traffic stops by the Lakeland Police Department.[9]

164.   These policies were the moving force behind the constitutional violation(s) that befell Plaintiff, to wit: the Arresting Officers acted in conformity with these unwritten policies when they conducted a traffic stop, arrested, charged, and subjected Plaintiff to excessive force, as asserted in this Complaint.

165.   The unwritten policies and practices identified above undermine otherwise appropriate written policies maintained by the City.

166.   Defendant City is also liable under *Monell* because the department's training, decision-making- and policymaking with respect to using force is so inadequate that it shows the Lakeland Police Department's deliberate indifference to the constitutional right of citizens.

167.   Under *City of Canton v. Harris*, liability may attach to a municipality if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been delivery indifferent to the need." *City of Canton*, 489 U.S. at 390.

---

[8] *Id.*
[9] *Id.*

168.   The above-mentioned circumstances show "the need for more or different training," as the Supreme Court outlined in *City of Canton v. Harris. Id.*

169.   The city's toleration of and failure to properly discipline officers who engage in excessive force is evidence that Plaintiff's injuries are traceable to the City's custom of permitting excessive force, and it is evidence that the City has acted with deliberate indifference in failing to supervise its officers. See, e.g., *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (stating that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law").

170.   The City's failure to adequately train its officers, including the Arresting Officers, concerning the appropriate use of force and to properly discipline them for their prior instances of excessive force directly and proximately caused the violation of Plaintiff's Fourth and Fourteenth Amendment rights.

171.   As a direct and proximate result of the City's polices and unwritten customs set forth above, Plaintiff has been damaged, including but not limited to physical pain, mental anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, and loss of sense of personal safety and dignity.

## VI.    <u>JURY DEMAND</u>

172.   Plaintiff respectfully demands a trial by jury on all issues so triable.

## VII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

A.    That Plaintiff recovers for his pain and suffering, past and future medical expenses, loss of earning capacity, and all other claims;

B.    That Plaintiff recovers for all compensatory and consequential damages available under Florida and/or federal law in an amount to be determined by a jury in excess of this Court's jurisdictional amount, including past and future medical care and other economic and non-economic harm to be determined at trial;

C.    That Plantiff receives all equitable relief, including, without limitation, that Defendant City of Lakeland be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein; and

D.    That Plaintiff receives all attorneys's fees per Florida law and/or federal law, i.e. Title 42 U.S.C. § 1988, as well as the costs or interst accrued as a result of this action and any other costs that may be associated with this action; and

E.    That Plantiff receives any and all other relief that this Court deems equitable, just, and proper.

*        *        SIGNATURE PAGE FOLLOWS        *        *

Respectfully submitted,

*/s/ Justin S. Abbarno*
Justin S. Abbarno
State Bar No. 1027968
Jordyn A. Parks*
**DiCELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio  44060
Tel.:   (440) 953-8888
Fax:   (440) 953-9138
jabbarno@dicellolevitt.com
jparks@dicellolevitt.com

***Counsel for Plaintiff***

*\*Pro Hac Vice* forthcoming