## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ANTWAN GLOVER,**

              **Plaintiff,**

                            **Case No. 8:24-cv-2913-MSS-NHA**

**v.**

**CITY OF LAKELAND, CHIEF SAM L. TAYLOR, DETECTIVE DILLON J. CORNN, SERGEANT MARK EBY, OFFICER ANTON E. JEFFERSON, OFFICER JASON N. MCCAIN,**

              **Defendants.**

_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants, City of Lakeland, Chief Sam L. Taylor, Detective Dillon J. Cornn, and Officer Anton E. Jefferson,[1] pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, move to dismiss Counts I, III, and IV of the Complaint (Doc. 1), filed by Plaintiff, Antwan Glover, on December 17, 2024.

### I. BACKGROUND

Plaintiff, Antwan Glover, alleges that around 6:00 p.m. on December 18, 2022, he was pulled over for not wearing his seatbelt. (Doc. 1 ¶ 40.) Officer Jefferson McCain observed cannabis in the center console ashtray, and the Officers

---

[1] Defendants Mark Eby and Jason N. McCain have not yet been served. In addition, to the extent Plaintiff is suing the individual officers in their official capacity, (*see* Doc. 1 ¶ 11), those claims are redundant with the official capacity claims and should be dismissed. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

smelled burning cannabis. (*Id.* at 46 & 49.) Officer McCain ordered Plaintiff out of the car, but Plaintiff questioned the order. (*Id.* at 55-56.) Plaintiff alleges that Officer McCain prevented him from getting out of the car after ordering him to get out of the car. (*Id.* at 57.) McCain and Cornn unsuccessfully attempted to remove a satchel Plaintiff wore (*Id.* at 59.) and then, with Jefferson, "struggle[d]" with Plaintiff. (*Id.* at 63.) They brought him to the ground and used close fist strikes to his face because he had not "quit fighting." (*Id.* at 67.) The Officers were finally able to gain control of Plaintiff after using a Conducted Energy Weapon, their body weight to keep him down, and additional strikes. (*Id.* at 71-75.) Only then were they able to "secure Plaintiff's arms behind his back and arrest him." (*Id.* at 76.) Plaintiff alleges that the Officers transported him to the Lakeland Police Department, where Officer McCain removed him from the vehicle and then turned him around, slammed him on the hood of the vehicle face down, and pulled his arms up toward his head. (*Id.* at 78-85.) Plaintiff was charged with three counts of battery on a law enforcement officer and one count of resisting officers with violence. (*Id.* at 87.)

Plaintiff asserts the following claims: (Count I) Excessive Force against the "Arresting Officers" (Jefferson, McCain, Cornn, and Eby); (Count II) False Arrest against the Arresting Officers; (Count III) Supervisory Liability against Mayor Mutz and LPD Chief Taylor (Count IV) Municipal Liability against City of Lakeland.

As will be set forth below, Counts I, III, and IV fail to plausibly allege these claims and should therefore be dismissed.

## II.    LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A plaintiff's unsupported conclusions of law or mixed fact and law, "unwarranted factual deductions," and "legal conclusions masquerading as facts" will not prevent a Rule 12(b)(6) dismissal. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III.    ARGUMENT

Plaintiff has failed to state a claim of excessive force, supervisory liability, or that the City had an official policy that was the moving force behind any alleged constitutional violation. Therefore, Counts I, III, and IV should be dismissed.

## A.    Qualified Immunity Standard

Qualified immunity shields government officials who are acting within their discretionary authority from money damages unless the plaintiff can establish that (1) the official violated a statutory or constitutional right, and (2) the right was

clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations omitted). Courts determine the validity of a qualified immunity defense at the earliest possible time. *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). The defense "may be raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (cleaned up). A motion to dismiss on qualified immunity grounds should be granted when the complaint fails to allege the violation of a clearly established constitutional right, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Id.*

## B.    Plaintiff Fails to Allege an Excessive Force Claim (Count I)

In Count I, Plaintiff asserts that "the Arresting Officers used excessive force when they arrested and/or seized Plaintiff by (a) forcibly wrestled Plaintiff to the ground; (b) repeatedly punched him in his face and torso; (c) repeatedly forced his body into the ground using their body weight; (d) deployed their CEWs into Plaintiff's body; (e) took Plaintiff into custody; (f) transported Plaintiff to Polk County Jail; and (g) effectuated his processing and booking at Polk County Jail. (Doc. 1 ¶ 107). The right to be free from the use of excessive force in the course of an arrest is ensured by the Fourth Amendment's protections from unreasonable searches and seizures. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Thus, a complaint must plausibly allege that "(1) that a seizure occurred, and (2) that the forced used to effect the seizure was unreasonable." *See Troupe v. Sarasota Cnty.*, 419F3d 1160, 1166 (11th Cir. 2005).

Courts assess the reasonableness of a use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The reviewing court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotations omitted). The reasonableness of a particular use of force depends on many factors, including whether the suspect was "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Although he alleges a claim for false arrest, Plaintiff concedes in his Complaint that the Arresting Officers had the right to not only detain but also to arrest Plaintiff. (Doc. 1 ¶ 121). This concession is compelled when the factual allegations in Plaintiff's Complaint are presumed to be true, as the Court is required to do at this stage. As Plaintiff's account in the Complaint makes clear, the Arresting Officers had probable cause to detain him pending further search of his vehicle after smelling burnt marijuana and observing suspected marijuana in the passenger compartment of the vehicle during the early seconds of the traffic stop. *See Bryan v. Spillman*, 217 F. App'x 882, 885 (11th Cir. 2007) (citations omitted) (holding that smell of marijuana emanating from vehicle established reasonable suspicion for search). Further, the Arresting Officers would have had the right to arrest Plaintiff upon finding unpackaged cannabis in the vehicle and did arrest him for resisting arrest and battery on a law enforcement officer after he

resisted a verbal command (Doc. 1 ¶ 56) and began "struggl[ing] with" (*id*. at 63) the officers outside the vehicle when they attempted to lawfully detain him.

### i. *The Officers' Use of Force was de minimus or otherwise reasonable.*

Because the officers had the right to arrest Plaintiff, they were lawfully permitted to use *some* amount of force to effect the arrest, even if Plaintiff had not initiated a struggle. *Leach v. Sarasota Cnty*., No. 23-10357, 2024 U.S. App. LEXIS 11637, at *10 (11th Cir. May 14, 2024)("[T]he right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof, and the typical arrest involves some force and injury."). Courts in the Eleventh Circuit have repeatedly held that, as a matter of law, the use of *de minimis* force to effect a lawful arrest does not constitute excessive force. *See*, *e.g*., *Wilson v. Hinton*, No. 3:17-cv-1045-J-34MCR, 2019 U.S. Dist. LEXIS 24991, at *28 (M.D. Fla. Feb. 15, 2019) (collecting cases on *de minimus* force); *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) (the application of de minimis force, without more, will not support a claim for excessive force).

As the Complaint details, the initial force used in relation to the traffic stop and the detention related to the smell of marijuana was extremely mild – Plaintiff alleges that the officers grabbed his arms and attempted to remove the satchel from his body (Doc. 1 ¶ 60), held onto his right arm and hand (*id*. at 61) and grabbed around his head and upper torso to pull him in front of one of the officers. (*Id*. at 63). There is no allegation that any of these actions caused Plaintiff any pain or injury.

The force employed by the officers does not escalate until Plaintiff, now outside the vehicle and still unrestrained, began "struggling with" the officers. (*Id.* at 63) When he did so, he committed the more severe offense of resisting an officer with violence, in violation of § 843.01, Fla. Stat., and he plunged the Arresting Officers into an unpredictable, potentially-dangerous situation that forced the officers to make split-second decisions regarding the amount of force required to gain Plaintiff's compliance. It is during this struggle that Plaintiff alleges the Officers brought Plaintiff to the ground (Doc. 1 ¶ 63) and placed one or more of their knees into his back (id. at 65), conduct which has been repeatedly recognized as *de minimis* force. *See Ainsworth v. City of Tampa*, No. 8:10-cv-293-T-23TGW, 2010 U.S. Dist. LEXIS 54742, at *3-4 (M.D. Fla. June 2, 2010)(finding *de minimus* force where, during traffic stop, officer reached into a peaceful but non-compliant plaintiff's vehicle, grabbed him, and "yanked him violently from the vehicle before slamming [his] body into the ground" causing "serious permanent injuries"); *Nolin*, 207 F.3d at 1258-59 (finding *de minimus* force where officers grabbed the plaintiff, shoved him a few feet against a vehicle, pushed a knee into his back, pushed his head against the van, searched his groin area in an uncomfortable manner, and placed him in handcuffs, all resulting in only minor bruising).

While the Arresting Officers had their focus trained on their struggle with Plaintiff, multiple bystanders and family members of Plaintiff were screaming at the engaged officers. (Doc. 1 ¶¶ 66, 68). It is during this tense struggle that the Officers employed multiple closed hand strikes to Plaintiff's face (*id.* at 67, 71) and

three CEW deployments (*id.* at 75) before they finally secured Plaintiff's hands in handcuffs. (*Id.* at 76). Because the Officers did not move to higher levels of force until Plaintiff began physically resisting their attempts to detain him, the first *Graham* factor weighs in favor of the Officers.

Because Plaintiff was physically struggling with the officers, even the heightened compliance techniques described above were directly proportionate to the force required to bring Plaintiff under compliance. The Eleventh Circuit has held that punches to the face are reasonable and even *de minimus* in circumstances where an officer is trying to gain control of a noncompliant subject. *Woodruff v. Trussville*, 434 F. App'x 852, 855 (11th Cir. 2011) ("The kind of force alleged by Woodruff -- including Adams punching Woodruff in the face, forcefully removing him from his car, and slamming him on the ground -- even when construed in the light most favorable to Woodruff, constituted only de minimis force.")

Taser deployments have also been found to be reasonable when used to bring an unruly subject under control because they generally do not cause serious injury and are designed to prevent—or, in this case, conclude—the more dangerous scenario of a physical confrontation between officers and a subject. "This Court has held that 'the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force. This is because, where a suspect appears hostile, belligerent, and uncooperative, use of a taser might be preferable to a physical struggle causing

serious harm to the suspect or the officer." *Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016) (citations omitted).

That Plaintiff alleges police deployed a CEW more than one time does not automatically transform the conduct into constitutionally impermissible force. In *LePage*, the court held that the officers did not use excessive force where they tasered the suspect two times while effecting an arrest for misdemeanor simple assault and misdemeanor obstruction of justice, because the suspect continued to disobey officers' commands and continued to act belligerently. *Id.* at 1294-95. Indeed, courts have approved of the tasering of even handcuffed suspects when they were still resisting and pulling away from arresting officers. *Leach*, 2024 U.S. App. LEXIS 11637, at *17; *see also*, *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1300, 1306 (11th Cir. 2009) (finding that the use of a taser three times on a handcuffed and shackled arrestee was not excessive force under the Eighth Amendment where the arrestee refused verbal commands and flailed uncontrollably).

Nowhere does Plaintiff allege that he had ceased his struggle prior to being placed in handcuffs or that he was struck or tasered by the officers after being secured in handcuffs. As the Eleventh Circuit has explained, "[o]fficers have much more leeway when trying to arrest a plaintiff, than when a plaintiff is already restrained and in handcuffs. *Padgett v. Snyder*, No. 17-14099-CIV-ROSENBERG, 2017 U.S. Dist. LEXIS 79787, at *12 (S.D. Fla. May 23, 2017). Although Plaintiff does allege that at one point in time he "[held] his hands with open palms near his head," (Doc. 1 ¶ 70), he does not allege that he was struck by any officer while he

was in this position, that he maintained this position and stopped resisting, or that he ever told the officers he was surrendering or that he presented his hands for cuffing. *Harper v. Davis*, 571 F. App'x 906, 913 (11th Cir. 2014) ("In qualified immunity cases, we ask not whether the suspect intended to surrender, but rather whether a reasonable officer on the scene would think the suspect was surrendering.").

Moreover, even if Plaintiff's allegation is construed to imply a clear sign of surrender, the Arresting Officers, in the midst of a heated struggle with a previously fractious arrestee, were not required to immediately credit this movement as a sign of surrender and cease the use of *any* force at all. *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009) (Even assuming, as we must, that Crenshaw was legitimately trying to surrender, it was objectively reasonable for Lister to question the sincerity of Crenshaw's attempt to do so" because Crenshaw "up to that point, had shown anything but an intention of surrendering.") Because Plaintiff admits actively resisting the Arresting Officers, the third *Graham* factor favors the Officers.

And, once Plaintiff started resisting, he tipped the second *Graham* factor—whether he, the suspect, posed an immediate threat to the safety of the Officers or others—towards the Officers as well. Plaintiff acknowledges in his Complaint that at the time he began struggling with the officers he was still wearing the satchel around his body and that he initiated the struggle while still wearing the satchel and prior to being restrained, patted-down, or searched. (Doc. 1 ¶¶ 61-76). The

Officers, therefore, had no way of knowing whether the individual who was physically resisting their lawful detention was also readily armed.

Additionally, the Officers were confronted with this struggle at night, in front of a residence Plaintiff had chosen to park in front of while Plaintiff's passengers and/or relatives converged and became increasingly displeased with and screamed at the Officers (*id.* at 66, 68) and, based on the presence of marijuana in the car, may have been under the influence. *Cf. Fils v. City of Aventura*, 647 F.3d 1272, 1288, 23 Fla. L. Weekly Fed. C 176 (11th Cir. 2011) (finding no excessive force used where officer threw plaintiff to the ground after plaintiff was verbally aggressive and expressed displeasure with officers, took a step toward them and "the presence of a small, potentially intoxicated crowd further escalated the perceived danger.") The increased, perceived danger of the situation would reasonably encourage the officers to seek to terminate the struggle with Plaintiff as quickly and efficiently as possible. The second and third *Graham* factors, then, weigh in favor of the officers.

### ii. *The Officers' conduct did not violate clearly established law.*

To the extent any of the conduct alleged in the complaint borders on excessive, the officers are nevertheless entitled to qualified immunity because they did not violate any clearly established right. Where, as here, qualified immunity is claimed by the officers, Plaintiff must not only plead that the force was unreasonable, but he must allege that the constitutional right was clear at the time the force was used. "Clearly established means that, at the time of the officer's

conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing was unlawful." *Helm v. Rainbow City*, 989 F.3d 1265, 1272 (11th Cir. 2021) (cleaned up). That a right was clearly established can be proven in three ways: (1) identifying a materially similar case in binding precedent, (2) reference to "a broader, clearly established principle that should control the novel facts" of the case, or (3) showing that the officers' conduct lies "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent." *Ingram v. Kubik*, 30 F.4th 1241, 1252 (11th Cir. 2022). "Although we have recognized that options two and three can suffice, the Supreme Court has warned [courts] not to 'define clearly established law at a high level of generality.'" *Crocker v. Beatty*, 995 F.3d 1232, 1241 (11th Cir. 2021). Therefore, "the second and third paths are rarely-trod ones" and "when a plaintiff relies on a general rule to show that the law is clearly established, it must apply with *obvious clarity* to the circumstances." *Crocker*, 995 F.3d at 1241 (cleaned up)(emphasis in original).

Plaintiff pleads only that the officers "were authorized to only use the amount of force necessary under the circumstances" to arrest Plaintiff and they "misused" their authority." (Doc. 1 ¶¶ 105, 106). He does not identify what force or conduct was excessive; instead, the Complaint seems to argue that *any* force was excessive since, he contends, the officers were wrong to take Plaintiff into custody and transport him to, and book him into, the Polk County Jail. (*Id*. at 107e-107g). However, as has been shown above, the officers were entitled to use at least some

force to effect the arrest that Plaintiff admits they had a basis to make. And the actions identified in the complaint as allegedly violating Plaintiff's rights— wrestling Plaintiff to the ground, pinning him to the ground, punching, and tasering him while he was under arrest, unrestrained, and actively physically resisting—are far from clear violations of either the Fourth Amendment or this Circuit's case law. Instead, the cases cited supra (and many more) confirm to the officers that such actions are acceptable ways to gain compliance from a recalcitrant arrestee and ensure the safety of themselves and others. Therefore, even if the Court were to find that some of the uses of force pled in the complaint were beyond the scope of what was necessary to effect Plaintiff's arrest, the officers would nonetheless be entitled to qualified immunity as their actions were not obviously beyond the bounds of permissible conduct and this Circuit's precedent makes clear that the actions employed by the officers to gain compliance were not constitutionally infirm.

The alleged force is less than what courts in this Circuit have sustained in other cases and the complaint fails to sufficiently allege any significant injury. While the focus in an excessive force case is on the force used and not the injury, significant injury can indicate that the force used was impermissible. Here, in addition to mental and emotional distress, Plaintiff pleads only that "Plaintiff's medical providers performed surgery on his shoulder and repaired his tooth." (Doc. 1 ¶ 94). He does not specify when those procedures were done or how these alleged events caused them; only the conclusory claim that the procedures were "a

direct and proximate" result of the events. This type of conclusory statement is not entitled to the presumption of truth and does not transform the Officers' otherwise permissible conduct into conduct violative of the Fourth Amendment.

In sum, the *Graham* factors weigh against Plaintiff, and the claim should be dismissed because, at worst this is a "close case" in which the officers are entitled to qualified immunity. As "government officials are not required to err on the side of caution, qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002).

## C.    Plaintiff Fails to Allege a Plausible Basis for a Supervisor Liability Claim (Count III)

In Count III, Plaintiff alleges that the "Supervisory Defendants" had a duty to "prevent the Arresting Officers" from arresting Plaintiff. (Doc. 1 ¶¶ 126-131).[2] Plaintiff vaguely alleges that Chief Taylor "knew or reasonably should have known of, participated in, endorsed, condone, and/or ratified the unconstitutional conduct" of the "Arresting Officers." (Doc. 1 ¶ 5.) Such allegations are too vague to survive a motion to dismiss, especially because the "standard by which a supervisor can be held liable for the actions of a subordinate is 'extremely rigorous.' " *Piazza*

---

[2] The count names "Defendant Mutz," who is not listed in either the case caption or in the section listing the Parties in paragraphs 15-30, nor are there any allegations regarding his involvement. To the extent that Plaintiff attempts to state a claim for supervisory liability against "Defendant Mutz," the claim should be dismissed for failure to state a claim as there are no allegations regarding his role in the supervision of the Officers.

*v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019) (citations omitted). "Supervisory officials cannot be held liable under § 1983 for unconstitutional acts by their subordinates based on respondeat-superior or vicarious-liability principles." *Id.* (citations omitted). "Instead, absent allegations of personal participation…supervisory liability is permissible only if there is a 'causal connection' between a supervisor's actions and the alleged constitutional violation." *Id.* (citations omitted).  The casual connection might be plausibly alleged by including specific facts of a "history of widespread abuse that puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Jackson v. City of Wadley*, No. CV 114-221, 2015 U.S. Dist. LEXIS 36999, at *13-15 (S.D. Ga. Mar. 2, 2015).

The standard in the Eleventh Circuit for demonstrating widespread abuse is high. *Id.* (finding that the plaintiff did not draw the necessary causal connection by merely repeating without any factual detail "that liability exists because of a lack of training and negligence in not following their duty"). "[D]eprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Plaintiff's complaint merely relies on the single incident of his own arrest (which of course cannot prove any shortcoming at this point – much less evidence of widespread and obvious abuse) or vague generalizations regarding the fact that the City makes

arrests in high crime areas. These allegations fall far short of the Eleventh Circuit's high bar for supervisory liability for a Section 1983 claim.

Nor do the allegations of purported failures after Plaintiff's arrest, such as failing to criminally prosecute the Arresting Officers or discipline them, (Doc. 1 ¶ 132), state a claim of supervisory liability. Not only are the allegations that the Arresting Officers committed crimes or warranted discipline not factually supported; none of these post hoc issues was causally related to the alleged constitutional violation – arrest without probable cause and with excessive force. The allegation that the Supervisory Defendants "created an environment" that "facilitated" or "aided the misconduct," (Doc. 1 ¶¶ 133-135), without any factual support at all are conclusory assertions and thus insufficient to state a claim.

Finally, to the extent Plaintiff tries to allege a failure to intervene supervisory liability claim, it also fails. A duty to intervene is limited to excessive force and only when the official is in a position to intervene. *Jackson v. City of Atlanta*, 97 F.4th 1343, 1361 (11th Cir. 2024). Plaintiff has failed to adequately allege the use of excessive force, as set forth above and alleges no plausible facts to support a failure to intervene claim; the claim must be dismissed. *McGuire v. City of Montgomery*, No. 2:11-CV-1027-WKW [WO], 2013 U.S. Dist. LEXIS 45157, at *48-49 (M.D. Ala. Mar. 29, 2013). As in *McGuire*, where Plaintiff "does not identify the circumstances under which any Defendant knew of any specific violation, was in a position to prevent it, and failed to do so," the claim must be dismissed. Count III fails to allege any basis for supervisory liability and should be dismissed.

### D.    Plaintiff's *Monell* Claim Fails (Count IV)

There is no vicarious liability under Section 1983. *Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir. 2022). A municipality can be held liable under Section 1983 for constitutional injuries inflicted by its employees only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff does not allege any facts that plausibly and causally link the Officers' alleged actions to an official custom or policy of the agency.

A plaintiff bringing a *Monell* claim may establish a municipality's policy that caused a constitutional injury by identifying either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "A municipality will not be liable under section 1983 for random acts, isolated incidents, or customs or practices of which its policymakers were unaware." *Jarvis v. City of Daytona Beach*, No. 6:23-cv-508-JSS-RMN, 2024 U.S. Dist. LEXIS 190200, at *64 (M.D. Fla. Oct. 19, 2024).

Plaintiff's attempt to link the Officers' alleged constitutional violations to an official policy of the City fails. Conclusory allegations are not sufficient to withstand a motion to dismiss a claim of municipal liability. *Gray v. City of Roswell*, 486 F. App'x 798, 801 (11th Cir. 2012). In addition, Plaintiff alleges only a single incident, but a "single incident of a constitutional violation is insufficient to prove a policy

or custom even when the incident involves several [subordinates]." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019).

Neither the statistics cited nor other purported similar incidents suffice to state a plausible claim that an official policy of the City of Lakeland was the moving force behind any purported constitutional violation. Plaintiff attempts to link a few other incidents to his arrest, but these allegations fall short of sufficient detail to even get to the "*Monell* starting line."[3] *See White v. Kelly*, No. 3:18-cv-1175-J-20PDB, 2020 U.S. Dist. LEXIS 147930, at *8 (M.D. Fla. Aug. 2, 2020) (listing several reasons why the plaintiff's identification of other uses of force by the agency and use of DOJ statistics were not compelling).

Plaintiff's claim regarding training is perhaps even more of a stretch. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citations omitted). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom

---

[3] Moreover, at least one of the alleged incidents is misrepresented. In paragraph 150, Plaintiff cites the complaint filed in *Davis v. Lakeland*, Case No. 8:23-cv-2507-TPB-CPT, on November 3, 2023. That complaint (or the amended complaint) did not allege that Davis "suffered from a broken jaw" or a "broken eye socket." While unproven allegations in a complaint evidence nothing, Defendants nonetheless request the Court take judicial notice of these two pleadings.

the [untrained employees] come into contact." *Id.* (citations and quotation marks omitted). "Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (citations omitted).

The purported lack of training must be specifically linked to the alleged violation. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). As the Supreme Court in *City of Canton* explained, for liability to attach, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* (finding that the plaintiff had to "prove that the deficiency in training actually caused the police officers' indifference to her medical needs"). Merely pointing to training a city "could have done" to prevent an incident is not enough. *See id.* at 392. The Supreme Court rejected this lower standard not only because it had already rejected *respondeat superior* liability for Section 1983 cases; such a standard "would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs." *Id.*

As another example, in *Connick*, the plaintiff sued the Orleans Parish district attorney in his official capacity under Section 1983 for damages after the district attorney conceded that his office had committed a *Brady* violation by failing to disclose evidence to the defense in plaintiff's armed robbery trial. 563 U.S. at 54. The plaintiff alleged that the prosecutor's office had failed to train its prosecutors adequately "about their duty to produce exculpatory evidence and that the lack of training had caused the nondisclosure" in his robbery case. *Id.* The plaintiff attempted to establish an official policy that led to the *Brady* violation by asserting

that "during the 10 years preceding his armed robbery trial,  Louisiana courts had overturned four convictions because of *Brady* violations by prosecutors" in the same office. *Id.* The Supreme Court found these other instances of *Brady* violations insufficient to establish a policy of inadequate training because those

> four reversals could not have put [the district attorney] on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue here. None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind. Because those incidents are not similar to the violation at issue here, they could not have put [the district attorney] on notice that specific training was necessary to avoid this constitutional violation.

*Id.* at 62-63; *see also Harapeti v. City of Miami Beach*, No. 1:23-cv-24018-LEIBOWITZ, 2024 U.S. Dist. LEXIS 213121, at *9 (S.D. Fla. Nov. 22, 2024) (rejecting the plaintiff's conclusory assertion that "there is an obvious need for training as alleged in the complaint").

Plaintiff in the instant case failed to allege any facts that identify a deficiency in the city's training program or any facts that demonstrate how any such deficiency is "closely related" to his alleged false arrest and excessive force claims. Accordingly, his *Monell* claim regarding a failure to train theory should be dismissed. Because Plaintiff fails to allege a custom or policy that was the moving force behind a constitutional violation, Count IV must be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, Defendants respectfully request this Court to dismiss Counts I, III, and IV.

## CERTIFICATE OF LOCAL RULE 3.01(g)
## GOOD FAITH CONFERRAL

Counsel for Defendants discussed the basis for their motion during an email conference with counsel for Plaintiff on March 5, 2025. Plaintiff's counsel objects to the dismissal of Plaintiff's claims.

Respectfully submitted on March 5, 2025.

Campbell Trohn Tamayo & Aranda, P.A.

By    /s/ *Jonathan B. Trohn*
**Jonathan B. Trohn**, ***lead counsel***
Fla. Bar. No. 880558
j.trohn@cttalaw.com
**Jennifer M. Vasquez**
Fla. Bar No. 71942
j.vasquez@cttalaw.com
**Thomas L. Dudash**
Fla. Bar No. 1044473
t.dudash@cttalaw.com
1701 South Florida Avenue
Lakeland, Florida 33803
P.O. Box 2369
Lakeland, FL 33806-2369
(863) 686-0043 (phone)
(863) 616-1445 (facsimile)
Attorneys for Defendants